UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY E. SMITH, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-93-RWS |
| ) | |
| CITY OF ST. CHARLES, ) | |
| MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before me on the motion to dismiss filed by Defendant City of St. Charles, Missouri (the "City") pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. [23]. Plaintiff Jimmy Smith, Jr. brings claims under 42 U.S.C. § 1983, as well as supplemental state law claims, against the City, several officers of the St. Charles Police Department, and Amanda Watson for their actions in his arrest, detainment, and prosecution in 2018 for stalking and harassing Watson. The City has moved to dismiss Count XI of Smith's complaint. Smith has not filed a response. For the reasons set forth below, the City's motion will be granted.

## BACKGROUND

Smith met Watson in October 2017 at Master Cuts, where Watson worked as a hairdresser. Compl. ¶ 10. Smith was one of Watson's customers. Id. at ¶ 11. At some point, Smith and Watson entered into what Smith believed was a romantic

relationship. Id. at ¶ 11. During their relationship, Watson told Smith information about herself, including that she had lost $10,000 and did not know how she was going to pay her rent. Id. at ¶ 12. Thereafter, Smith tipped Watson $100 for a haircut and gave her approximately $6,300, which she promised to repay. Id. at ¶¶ 12–13. Watson has not repaid the money. Id. at ¶ 13.

Smith learned later that Watson had induced him into giving her money through false statements. Id. at ¶ 13. When Smith confronted Watson about her false statements and advised her that he was going to file a lawsuit against her to recover the money she had fraudulently obtained from him, Watson filed a false police report against him. Id. at ¶ 14. Watson was coached through the process of filing the police report by Defendant Officer Jeffrey Norman. Id.

Then, on January 19, 2018, Defendant Officers Andrew Moffitt, John Stanczak, and Jeremy Bratton pulled Smith's vehicle over and arrested him for stalking and harassing Watson. Id. at ¶ 15. The officers subjected Smith to verbal abuse during the stop and, at some point, admitted that they were looking for a reason to pull him over. Id. The stop was made without probable cause and was based on deliberate misinformation and false reports. Id.

After his arrest, Smith was detained in the St. Charles jail for six days until he was released on bond. Id. at ¶ 16. While detained, Smith was interrogated by Officer Norman, who seized Smith's phone and caused the deletion of several exculpatory

messages. Id. at ¶ 17. Officer Norman also omitted key information in a police report, wrote a probable cause statement against Smith, and submitted a warrant application to the St. Charles County Prosecutor's Office. Id. at ¶ 18. As a result of these actions, Smith was initially prosecuted for stalking and harassing Watson. Id.

Although the charges against Smith were dismissed in May 2018, Officer Gregory Klipsch arrested and detained Smith again in November 2018 due to additional false accusations made by Watson. Id. at ¶¶ 20–21. Smith was detained for several hours but was ultimately released. Id. at ¶ 21. Smith then filed complaints against Officer Norman with the St. Charles Police Department. Id. at ¶ 22. Department officials persuaded Smith to withdraw his first complaint, and Smith's other complaints were deemed to be unfounded by the Chief of the St. Charles Police Department (the "Chief of Police"). Id. at ¶¶ 22–23.

On January 25, 2021, Smith filed this lawsuit against the City, several officers of the St. Charles Police Department, and Watson. Smith's complaint includes claims under § 1983 for violations of his constitutional rights as well as state law claims under Missouri law. The City has moved to dismiss Count XI of Smith's complaint, the sole count in which the City is named as a defendant, pursuant to Rule 12(b)(6).

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. In ruling on such a motion, I must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. Hager v. Arkansas Dept. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). I am not, however, bound to accept as true legal conclusions couched as factual allegations. Bell Atlantic Corp. v. Twombly, 555 U.S. 544, 555 (2007).

To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Id. A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. Id.

## DISCUSSION

The sole count in Smith's complaint that names the City as a defendant is Count XI. In Count XI, Smith brings a claim under § 1983, alleging that he suffered damages due to an unconstitutional policy or custom maintained by the City. Smith's claim is premised on his allegations that the Chief of Police is a policymaker for the City and that the Chief of Police ratified Officer Norman's alleged

4

unconstitutional conduct by deeming Smith's complaints against Officer Norman to be unfounded. See Compl. ¶¶ 23 & 70. The City argues that Count XI should be dismissed because Smith has failed to state a claim against the City upon which relief can be granted.

A municipality may be held liable under § 1983 for constitutional violations committed by its employees only if the violations "resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Bolderson v. City of Wentzville, 840 F.3d 982, 985 (8th Cir. 2016). To impose liability, there must be "'a causal connection between the municipal policy or custom and the alleged constitutional violation.'" Waters v. Madson, 921 F.3d 725, 743 (8th Cir. 2019) (quoting Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013)). Because Smith does not allege that the City failed to train or supervise its police officers, I will analyze his claim under the standards for an official policy and unofficial custom.

### *Official Policy*

Smith has failed to allege sufficient facts to support a claim against the City based on an official policy. An official policy may take the form of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a] municipality's governing body." Angarita v. St. Louis Cnty., 981 F.2d 1537, 1546 (8th Cir. 1992). An official policy may also be inferred from a single act or

5

decision if "the decisionmaker in question possesses final authority to establish municipal policy with respect to the action ordered." Bolderson, 840 F.3d at 985. Similarly, if an authorized policymaker "approve[s] a subordinate's decision and the basis for it," his ratification may also be chargeable to the municipality. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). A municipality will only be liable, however, if the policymaker "makes a deliberate choice among competing alternatives that results in the violation of constitutional rights." Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007).

Here, Smith has not identified any policy statement, ordinance, or regulation that he believes is unconstitutional and instead relies on allegations that the Chief of Police is a policymaker who ratified Officer Norman's alleged unconstitutional conduct. See Compl. ¶¶ 23 & 70. However, nothing in Smith's complaint suggests that the alleged constitutional violations were caused by the Chief of Police's after-the-fact determination that Smith's complaints against Officer Norman were unfounded. Therefore, even assuming the Chief of Police is an authorized policymaker, Smith has failed to state a claim against the City based on an official policy. See Waters, 921 F.3d at 743 (affirming dismissal of § 1983 claim against the city because the chief of police's "after-the-fact determination did not cause the alleged violations of … constitutional rights"); Lollie v. Johnson, No. 14-cv-4784 (SRN/HB), 2015 WL 3407931, at *7 (D. Minn. May 27, 2015).

6

### *Unofficial Custom*

Smith has also failed to state a claim against the City based on an unofficial custom. To state a claim against a municipality based on an unofficial custom, a plaintiff must allege sufficient facts indicating: (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;" (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct;" and (3) "that the custom was the moving force behind the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999); Ware v. Jackson Cnty., 150 F.3d 873, 880 (8th Cir. 1998).

Here, Smith has alleged no facts indicating a "continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's police officers. Smith has alleged facts related only to his own arrests and detentions, which is not sufficient to state a claim against the City based on an unofficial custom. See, e.g., Ulrich, 715 F.3d at 1061 ("Generally, an isolated incident of alleged police misconduct … cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."); McKay v. City of St. Louis, No. 4:15-cv-01315-JAR, 2019 WL 1436972, at *13 (E.D. Mo. Mar. 31, 2019) ("To illustrate [a pattern of unconstitutional misconduct], plaintiffs typically present evidence of a significant

number of unresolved complaints against the police department or city to show that the city routinely ignores such allegations.").

Because Smith has failed to state a plausible claim against the City based on an official policy or unofficial custom, Count XI of Smith's complaint will be dismissed. In addition, to the extent Smith's federal law claims against individual officers are against the officers in their official capacities, those claims are treated as claims against the City and will also be dismissed as redundant of Count XI. See e.g., Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the City's motion will be granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Charles, Missouri's motion to dismiss [23] is **GRANTED**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 4th day of November 2021.

8